IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> G.N.T., INC., d/b/a GNT FOODS, ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION NO. <br><br> COMPLAINT <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Corey Bussey ("Bussey"), Justin Jones ("Jones"), and Christopher Evans ("Evans") (collectively "the Claimants") who were adversely affected by such practices. The U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant G.N.T., Inc.

1

d/b/a GNT Foods ("Defendant") subjected the Claimants to a hostile work environment based on their race, African American, and terminated their employment in retaliation for complaining about the hostile working environment to Defendant's management as well as to the EEOC, in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring

this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a Georgia corporation, doing business in the state of Georgia, and the City of East Point, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, the Claimants filed charges with the Commission alleging violations of Title VII by Defendant.

7. On March 10, 2017, the Commission issued to Defendant Letters of Determination with respect to the EEOC charges filed by the Claimants finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to eliminate the discriminatory practices and provide appropriate relief.

8. On May 15, 2017, the Commission issued to Defendant Notices of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission with respect to EEOC Charges filed by Evans and Jones.

9. On May 31, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission with respect to the EEOC Charge filed by Bussey.

10. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Since at least 2013, Defendant has engaged in unlawful employment practices at its grocery store located in East Point, Georgia, in violation of Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000(e)-5(f)(l), by subjecting the Claimants to a racially hostile work environment and discharging them in retaliation for complaining about the unlawful employment practices.

12. The Claimants were employed in Defendant's meat department. Generally, African American meat department employees were directly supervised by an African American meat manager, while the non-African

American meat department employees, who were identified by Defendant as Hispanic, were supervised by a Hispanic meat manager.

13.     The Claimants performed their work duties in an area separate from Defendant's retail space.  However, Defendant's owner was regularly present in the meat department area and interacted with the employees on a daily basis.

14.     Defendant's owner intentionally and prominently displayed posters with images of monkeys on them in the meat department area where the Claimants worked.  The Claimants saw these posters in their work area on a daily basis and found them to be racially offensive.

15.     The owner removed the posters prior to a scheduled visit by an EEOC investigator in relation to Bussey's charge of discrimination. The offensive posters were returned to their place on the walls in the meat department area immediately following the visit.

16.     Defendant failed to maintain any written anti-discrimination policies or procedures for reporting discrimination at the time the Claimants worked for Defendant.

17. Defendant also failed to verbally communicate any anti-discrimination policies or reporting procedures to Claimants during their employment.

**I.   Claimant Corey Bussey**

18. Bussey began working for Defendant on or around August 29, 2014, as a bag boy, and he last worked as a chicken tray helper. Shortly after being transferred to work in the meat department as a chicken tray helper, Bussey was subjected to racial harassment by Defendant's owner. On a daily basis, the owner referred to the Claimants and other African American employees by racially derogatory names, including "nigger" and "monkey."

19. After complaints to the owner resulted in no remedial action, Bussey filed a charge of discrimination with the EEOC on or around July 10, 2015. After filing the charge, the owner requested to meet with Bussey and other African American employees, and the owner agreed to stop referring to the African American employees using racially derogatory terms.

20. Bussey agreed to dismiss his EEOC charge, and on or around September 1, 2015, the charge was officially withdrawn by the EEOC. However, within three weeks of Bussey withdrawing his EEOC charge, the owner resumed his daily use of racially derogatory terms to refer to African American employees.

21.     On the morning of September 22, 2015, around 9:30 a.m., Bussey and Claimant Jones were working on unloading a delivery truck when the owner approached Bussey and physically assaulted him by slapping him on the face.

22.     The owner immediately discharged Bussey after he expressed his intention to call the police to report the incident.

23.     Bussey called the police and the officers arrived around 10:59 a.m. After the police questioned Bussey, the owner and other witnesses about the incident, the owner demanded that Bussey leave the store premises.

24.     The report drafted by the police in response to the incident states, in part, that "tension had been building" due to Bussey's complaint to the EEOC about racial statements allegedly made by Defendant's owner.

**II.     Claimant Justin Jones**

25.     Jones began working for Defendant as a meat wrapper on or about January 15, 2008. During his employment, Jones was subjected to racial harassment by Defendant's owner and was referred to by racially derogatory names, including "nigger" and "monkey."

26.     Jones also witnessed the owner refer to Claimant Bussey and other African American employees as "nigger."

27. When Bussey filed his EEOC charge of discrimination against Defendant, he named Jones as a witness and Jones was interviewed by the EEOC investigator. Subsequent to Jones' EEOC interview, the owner began having frequent outbursts focused mainly on the Claimants.

28. On or about November 18, 2015, Jones and Evans' manager told them that the owner was planning to start disciplining and firing African American employees he felt were causing legal problems and complaining to the EEOC.

29. On or about December 21, 2015, Jones complained to a meat department manager that he felt he was being subjected to discrimination after the owner accused him of working while under the influence of alcohol and drugs and sent him home without pay. Jones emphatically denies the owner's accusations.

30. On or about December 24, 2015, Jones filed a charge of discrimination with the EEOC, alleging race discrimination and retaliation for participating in an EEOC investigation.

31. On or about December 28, 2015, Defendant's owner and Jones' manager approached him in an effort to persuade him not to file an EEOC charge against Defendant. Specifically, Jones' manager wanted to know what could be done to prevent Jones from filing an EEOC complaint.

32. The EEOC sent notice of Jones' charge to Defendant on or about January 22, 2016.

33. On or about January 28, 2016, Defendant's newly-appointed supervisor terminated Jones' employment allegedly for consistently leaving work early without notifying management.

34. Prior to filing his EEOC charge against Defendant, Jones had never been disciplined by Defendant for any performance issues.

35. Approximately one year prior to his termination, the owner approved Jones' request to be on a modified schedule, 8:00 a.m. to 3:30 p.m. on Wednesdays through Fridays, so that he could pick up his children from school.

36. Therefore, on the days that Defendant alleges Jones was leaving work early without authorization from management, Jones was following the modified schedule that had already been approved by the owner. Defendant never informed Jones of any changes in policy or practice that would require him to adjust his schedule or to ask for the schedule to be approved again.

**III. Claimant Christopher Evans**

37. Evans began working for Defendant as a meat wrapper on or about February 13, 2013.

38.     During his employment, Evans was subjected to racial harassment by the owner and was referred to on a daily basis by derogatory names, including "nigger" and "monkey."  On one occasion, the owner asked Evans and Claimant Jones, "Do you like when I call you nigger?"  They stated that they did not.

39.     On or about September 12, 2015, a Hispanic employee called Evans "chango," the Spanish word for monkey, and told him to "go get some monkey bread."  The next day, the same employee told Evans to "get to the back, jungle monkey."

40.     Evans complained to the owner and a meat department manager about the Hispanic employee's racist statements on two separate occasions, but despite his complaints to management, Defendant failed to take any remedial action.

41.     Three days after making his last complaint to Defendant's management about the racially hostile work environment, when Evans reported to work, he was confronted by the local police for allegedly making terroristic threats to the Hispanic employee who had been harassing him.

42.     That same day, on or about September 16, 2015, Evans filed a charge of discrimination against Defendant with the EEOC alleging hostile work environment based on his race and retaliation.

43. Soon after receiving notice of Evans' EEOC complaint on or about September 23, 2015, the owner significantly reduced Evans' scheduled work hours.

44. On or around October 14, 2015, the owner told Evans that he would grant him his normally scheduled work hours back and give him one-hundred dollars if he would agree to withdraw his EEOC charge against Defendant.

45. On or about October 15, 2015, the owner contacted Evans asking whether he had withdrawn his EEOC charge and asking that he contact him.

46. Shortly thereafter, the Claimants' manager had a meeting with all the African American employees in the meat department and informed the group that the owner was trying to remove all the African Americans from the store starting with Evans and Jones.

47. On or about the first week in November 2015, the owner issued a fifty cent raise to the employees in the meat department but only granted Evans a twenty-five cent raise.

48. On or about December 8, 2015, the owner questioned Evans about his continued contacts with the EEOC and advised him to resign. Evans responded that he would not. That same day, Evans was reassigned to work as a

bagger in the retail section of the store, where his hours scheduled per week would be less than the hours he worked in the meat department.

49. The EEOC intervened by requesting that Evans be reinstated to his position in the meat department and Defendant complied.

50. On or about March 5, 2016, Evans asked about the possibility of acquiring a back brace while unloading a truck. The owner responded by stating, "It must be that time of the month, because [Evans] [was] acting like a bitch." When Evans objected to the owner's derogatory comments, his supervisor instructed him to go home.

51. On or about March 7, 2016, Evans reported to work as scheduled but was informed that his employment was terminated.

52. At all times, the Claimants were offended by the racially offensive behavior of the owner and other Defendant employees and objected to it regularly.

53. The effects of the practices complained of above have deprived the Claimants of equal employment opportunities and otherwise adversely affected their status as employees because of their race, African American, and because they engaged in protected activity.

54. The unlawful employment practices complained of above were intentional.

55. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Claimants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from subjecting employees to a hostile work environment based on race and from terminating employees in retaliation for complaining about any unlawful employment practices.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for African American employees and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make the Claimants whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, including but not limited to reinstatement or front pay.

D. Order Defendant to make the Claimants whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search and relocation expenses, in amounts to be determined at trial.

E. Order Defendant to make the Claimants whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain and suffering, inconvenience, loss of enjoyment of life, anxiety, stress, depression, humiliation, and loss of self-esteem, in amounts to be determined at trial.

F. Order Defendant to pay the Claimants punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

>Respectfully submitted,
>
>JAMES L. LEE
>Acting General Counsel
>
>GWENDOLYN YOUNG REAMS
>Associate General Counsel
>
>ANTONETTE SEWELL
>Regional Attorney
>
>LAKISHA DUCKETT ZIMBABWE
>Supervisory Trial Attorney
>
>*s/ Sairalina Montesino*
>SAIRALINA MONTESINO
>(GA Bar #940665)
>Trial Attorney
>
>EQUAL EMPLOYMENT
>OPPORTUNITY COMMISSION
>Atlanta District Office
>100 Alabama St. SW
>Atlanta, Georgia 30303
>Tel: 404-562-6842
>Fax: 404-562-6905
>
>ATTORNEYS FOR PLAINTIFF EEOC